UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
JANICE MOONEY,                          :
                                        :
                    Plaintiff,          :        18cv328(DLC)
                                        :
            -v-                         :        OPINION AND ORDER
                                        :
THE CITY OF NEW YORK, PAUL VISCONTI,    :
Individually and in his Official        :
Capacity and JAVIER LOJAN,              :
Individually and in his Official        :
Capacity,                               :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X

APPEARANCES

For the plaintiff:
Hope Senzer Gabor
Jonathan A. Tand & Associates, P.C.
1025 Old Country Road, Suite 314
Westbury, New York 11590

For the defendants:
Leora R. Grushka
Bruce Rosenbaum
Zachary W. Carter
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

    Plaintiff Janice Mooney, an employee of the New York City

Department of Sanitation ("DSNY"), an agency of the City of New

York (the "City"), alleges that two of her supervisors,

defendants Paul Visconti and Javier Lojan, discriminated and

retaliated against her in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000a et seq. ("Title VII"), the
New York State Human Rights Law, N.Y. Executive Law § 290 et
seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C.
Admin. Code § 8-101 et seq. ("NYCHRL"), and 42 U.S.C. § 1983
("Section 1983").  The defendants have moved to dismiss the
amended complaint ("FAC").  For the reasons that follow, the
motion is granted in part.


## Background

The following facts are alleged in the FAC.  Mooney began
working for DSNY in 2000.  In 2012, she began working in the
Bronx sub-department as a One-Star Deputy Chief, under the
supervision of defendant Visconti.

In January 2014, Mooney was transferred to the Queens West
sub-department and was no longer under Visconti's direct
supervision.  Visconti did not provide Mooney her 2013
evaluation until September 2014, when Visconti rated her
"Conditional."  Mooney was the only employee who did not receive
her evaluation until that time; all other employees received
their evaluations in February 2014.  Mooney contested her
"Conditional" rating, but the review did not occur until August
2015.  This delay prevented Mooney from "qualifying" for a
promotion.  When the review occurred, it did not comply with
DSNY procedures because the Chief of Personnel was not present

during the review.  The review left Mooney's Conditional rating unchanged.

After Mooney's transfer to Queens West, she again began receiving "Superior" ratings.  These ratings resulted in Mooney being promoted to Executive Officer by Borough Chief Thomas Albano.  In June 2015, Albano retired and was replaced as Borough Chief by defendant Lojan.

In February 2016, Lojan removed Mooney from the Executive Officer position and replaced her with Ignacio Azzara, a male with less seniority than Mooney.  When Mooney asked Lojan for an explanation, he told her that he "did not need to give [Mooney] a reason because he was the boss and that [Mooney] was not his first choice" for the position.  The removal made it "more difficult" for Mooney to be promoted.

On April 2, 2016, Mooney oversaw a cleaning job.  Lojan informed Mooney that the work was "satisfactory."  Two days later, Lojan sent Mooney several emails stating that there were "discrepancies" with the project.

In May 2016, Mooney underwent surgery on her right foot, and her recovery time took longer than expected.  Mooney sought to convert scheduled vacations in July and August 2016 to sick leave.  Lojan, however, docked Mooney two weeks' vacation despite her still being eligible to use sick leave.  This violated DSNY rules, which require the medical department to

make sick leave determinations.

When Mooney was first transferred to Queens West, she was given the use of a locker room with running water.  In November 2016, Lojan took the locker room previously assigned to Mooney for himself and moved Mooney to "a dilapidated room (which he indicated was the new female locker room) with no running water and a ceiling that was falling down."

Around February 14, 2017, there was a "snow event" that caused the "entire department" to work.  This was Mooney's day off, and Lojan did not permit Mooney to work, thereby denying her an opportunity to earn overtime pay.  The same week, Lojan requested that Azzara be assigned work on his scheduled day off so that Azzara could earn overtime pay.

On February 22, Lojan gave Mooney her 2016 evaluation, which was "drastically worse" than her previous evaluations. Mooney was given "Conditional" ratings for many tasks for which she had previously been rated "Superior."  The 2016 evaluation also notes that Mooney had "issues with timeliness and absences."  But "none of these incidents were officially documented in [DSNY's] absence and lateness log."  One male DSNY employee, Joe Austin, arrived two hours late for work once in March 2017, and "his lateness was not documented, and he was not disciplined for this infraction."  In the comments section of her 2016 evaluation, Mooney wrote that she was not being treated

equally as compared to her male coworkers.

In late August or early September 2017, Lojan issued Mooney an Official Letter of Warning falsely asserting that Mooney had failed to properly report an incident involving a vehicle. Mooney wrote on the Official Letter of Warning that "she was not being treated the same as her male coworkers." Then, on September 12, Lojan issued a second Official Letter of Warning to Mooney "regarding a lateness which occurred weeks prior." Warnings for tardiness were normally issued "the day of the lateness."

On September 16, 2017, Lojan approved only two of the three weeks of leave that Mooney requested. Then, on September 26, Lojan assigned Mooney to "cover the night relief" during one of those two weeks. There were other male employees who did not request that week off and who were available to cover the night relief.

In January 2018, Mooney received a "Satisfactory" 2017 evaluation from her new Borough Chief. The "sole[]" reason Mooney received this rating was because of the two warning letters from Lojan in her file. As a result of the "Conditional" rating she received from Lojan in 2016 and the "Satisfactory" rating she received in 2017, Mooney is

"ineligible" to apply for promotions.[1]

This action was filed on January 12, 2018.  On April 9, Mooney was transferred to the Queens East sub-department, which is "known throughout [DSNY] as an unpromotable position." defendants filed a motion to dismiss on April 16, to which Mooney responded by filing the FAC.

The FAC asserts claims of gender discrimination and retaliation in violation of Title VII, the NYSHRL, and the NYCHRL, and denial of equal protection in violation of 42 U.S.C. § 1983, against DSNY,[2] Visconti, and Lojan.  The defendants moved to dismiss the FAC on May 23, 2018, and the motion became fully submitted on July 20.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

---

[1] The FAC is not entirely clear whether Lojan's annual performance evaluation for Mooney for the year 2016 gave Mooney an overall Conditional rating or only a Conditional rating for some tasks.

[2] In the defendants' motion to dismiss, they point out that the FAC names DSNY as a defendant, but that the agencies of the City of New York (the "City") are not suable entities.  See Nnebe v. Daus, 644 F.3d 147, 158 n.6 (2d Cir. 2011).  Having received no objection from Mooney, the Court orders DSNY dropped as a defendant and the City added as a defendant.  See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").  The caption of this case has been amended accordingly.

relief that is plausible on its face." Cohen v. Rosicki,
Rosicki & Assocs., 897 F.3d 75, 80 (2d Cir. 2018) (citation
omitted).  A claim to relief is plausible when the factual
allegations in a complaint "allow[] the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Progressive Credit Union v. City of New
York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted).  A
court "must accept as true all of the allegations contained in a
complaint, though threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d
Cir. 2017) (citation omitted).

I. Discrimination Claims

    A. Federal and State Discrimination Claims

    Title VII makes it unlawful to "discriminate against any
individual with respect to [their] compensation, terms,
conditions, or privileges of employment, because of such
individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  "To state
a claim for employment discrimination under Title VII, a
plaintiff must plausibly allege that (1) the employer took
adverse action against him, and (2) his race, color, religion,
sex, or national origin was a motivating factor in the
employment decision." Shultz v. Congregation Shearith Israel of
City of New York, 867 F.3d 298, 304 (2d Cir. 2017) (citation

omitted).  Claims of sex-based discrimination under Title VII
and the NYSHRL are analyzed under the "same standards."  Walsh
v. N.Y.C. Housing Auth., 828 F.3d 70, 75 (2d Cir. 2016)
(citation omitted).

An adverse employment action is a "materially adverse
change in the terms and conditions of employment" that is "more
disruptive than a mere inconvenience or alteration of job
responsibilities."  Shultz, 867 F.3d at 304 (citation omitted).
The loss of "overtime opportunities" can be a materially adverse
change in conditions of employment.  Fairbrother v. Morrison,
412 F.3d 39, 56 (2d Cir. 2005), abrogated in part on other
grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S.
53 (2006).  Being given a "less distinguished title" may also
constitute an adverse employment action.  Galabya v. N.Y.C. Bd.
of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted).

A transfer between positions is an adverse employment
action in only some circumstances.  "Without a real change in
the conditions of employment, a transfer is" not an adverse
action, and in such cases "the fact that the employee views the
transfer either positively or negatively does not of itself
render the . . . transfer an adverse employment action."
Fairbrother, 412 F.3d at 56 (citation omitted).  "[A] transfer
is an adverse employment action if it results in a change in
responsibilities so significant as to constitute a setback to

the plaintiff's career." Galabya, 202 F.3d at 641. Similarly, a negative performance evaluation is not an adverse employment action unless it has "negative ramifications for the plaintiff's job conditions." Fairbrother, 412 F.3d at 56.

A plaintiff can meet the burden of pleading causation "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). "The facts required" to survive a motion to dismiss "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but must "give plausible support to a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). "At the pleadings stage, a plaintiff may . . . allege disparate treatment by pleading the more favorable treatment of employees not in the protected group, who are similarly situated in all material respects." Farsetta v. Dep't of Veterans Affairs, No. 16cv6124(DLC), 2017 WL 3669561, at *5 (S.D.N.Y. Aug. 24, 2017) (citation omitted). "[D]etailed factual allegations are not required" to establish whether a comparator employee is similarly situated, but "a formulaic recitation" does not suffice. Vega, 801 F.3d at 86; Farsetta, 2017 WL 3669561, at *5.

To state a hostile work environment claim, a plaintiff must plead conduct that "(1) is objectively severe or pervasive -- that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted). A workplace is objectively hostile when it "is permeated with discriminatory intimidation, ridicule, and insult." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010) (citation omitted).

A plaintiff states a claim against a municipality under Section 1983 by alleging that they experienced gender discrimination due to the "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 128 (2d Cir. 2004) (citation omitted). The "relevant practice [must be] so widespread as to have the force of law" to be actionable under Section 1983. Id. (citation omitted).

To state a Section 1983 claim against an individual, a plaintiff must allege "(a) that the defendant is a person acting under the color of state law, . . . (b) that the defendant caused the plaintiff to be deprived of a federal right," and (c)

that the defendant was "personal[ly] involve[d]" in the deprivation. Id. at 122 (citation omitted). "State employment is generally sufficient to render the defendant a state actor." Id. at 123 (citation omitted).

Individuals may not be held liable under Title VII. See Chauca v. Abraham, 841 F.3d 86, 89 n.1 (2d Cir. 2016). A supervisor may, however, be held liable under the NYSHRL "if that supervisor actually participates in the conduct giving rise to the discrimination." Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004) (citation omitted). Individuals may also be held liable under Section 1983. See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). The motion to dismiss is accordingly granted to the extent of dismissing Mooney's Title VII claims against Visconti and Lojan.

Mooney filed her charge with the EEOC on April 4, 2017, so events occurring after June 8, 2016 are timely for her Title VII claims.[3] See Duplan v. City of New York, 888 F.3d 612, 621 & n.7 (2d Cir. 2018). This suit was filed on January 12, 2018.

---

[3] Although Mooney seeks to take advantage of the so-called continuing violation doctrine to include events prior to this date in her lawsuit, the defendants correctly note that, to the extent Mooney complains of "discrete acts of discrimination or retaliation," those acts must have occurred during the limitations period to be actionable. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). Acts outside the limitations period may, however, be considered when assessing Mooney's hostile work environment claim. See id.

Accordingly, events that occurred after January 12, 2015 are timely for her Section 1983 claims. See Duplan, 888 F.3d at 619 (three-year statute of limitations for Section 1983 claims). The NYSHRL has a three-year statute of limitations, but the limitations period is tolled during the pendency of EEOC proceedings. See Negron v. Bank of Am. Corp., No. 15cv8296(DLC), 2016 WL 7238959, at *1 (S.D.N.Y. Dec. 13, 2016). Mooney filed her EEOC charge on April 4, 2017, and received a right-to-sue letter on October 20, 2017, so the limitations period for her NYSHRL claims is extended by 199 days. Accordingly, events that occurred after June 27, 2014 are timely for her NYSHRL claims.

In opposition to this renewed motion to dismiss, Mooney contends that the following ten events constitute adverse employment actions. (1) Visconti and Lojan removed her as Executive Officer of the Queens West sub-department in February 2016, replacing her with a less experienced male. (2) In April 2016, Lojan criticized Mooney's performance overseeing a cleaning detail in multiple emails. (3) Lojan required Mooney to use two weeks of her scheduled vacation time in July and August 2016 when she would have preferred use sick leave. (4) In November 2016, Lojan took Mooney's locker room for himself and moved her locker room to a dilapidated room with no running water. (5) Lojan did not request Mooney to work overtime on a

day in February 2017 when the rest of the Department was
working.  (6) In February 2017, Lojan gave Mooney a Conditional
rating in many areas of her 2016 performance review.  (7) In
September 2017, Lojan permitted Mooney to use only two of the
three weeks of leave time that she requested.  (8) In September
2017, Lojan required Mooney to cover "night relief" for a week
of her two-week leave time.  (9) Because Lojan had issued Mooney
two warning letters in August and September 2017, Mooney's new
supervisor gave her a Satisfactory rating in 2018 on her 2017
performance review, rendering her ineligible for promotion for
two years.  (10) Finally, in April 2018, DSNY transferred Mooney
to Queens East, which is considered an "unpromotable" position.
Mooney also alleges that her treatment at DSNY constituted a
hostile work environment.

With three exceptions, Mooney has failed to plead a claim
of gender discrimination.  Many of the ten incidents on which
she rests her claims suffer from multiple infirmities.  Some do
not constitute adverse actions, others are time barred, some are
pleaded against ineligible defendants, and for others there is
no plausible claim that gender discrimination animated the
action.

Events 1 and 2 are not timely under Title VII.  The Section
1983 claim against the City is also dismissed.  The FAC does not
allege that either DSNY specifically or the City of New York

generally has a policy of discriminating against women sanitation employees. And Mooney has not alleged facts that could support the conclusion that the final decisionmakers within DSNY engaged in or approved of any gender discrimination. Accordingly, the motion to dismiss is granted as to her Section 1983 claim against the City.

Several of these ten events do not constitute adverse actions. For instance, a negative performance review or a transfer to another post do not ordinarily constitute adverse actions, but if the review or transfer affected the plaintiff's ability to obtain a promotion, then they may very well be found to be adverse actions by the fact finder. Here, in item 9, Mooney pleads that pursuant to DSNY policy employees are not eligible for promotion within DSNY for two years after they receive an overall annual rating of less than Superior or Outstanding, and that in 2018 she received only a Satisfactory rating for 2017. In item 10, she asserts that a transfer to Queens East in 2018 was a dead end transfer from which no promotion was possible as a practical matter. Mooney has not identified, however, any job opening in DSNY in 2018 for which she was otherwise qualified, which would have constituted a promotion for her, and for which she would have applied but for her poor performance rating for the year 2017 or her current posting to Queens East. Without at least the identification of

such positions, it will be impossible for discovery to be taken or for a jury to evaluate whether either item 9 or 10 constituted a material alteration to the terms of Mooney's employment.[4]

Similarly, items 2 and 6 do not constitute adverse employment actions.  Criticisms of an employee's performance at the time the work is performed, or through less than favorable ratings in certain categories of performance during an annual review, without more, do not constitute adverse employment actions.

Items 7 and 8 concern a supervisor's use of discretionary authority to grant or deny requested leave or to arrange for coverage of shifts.  Lojan only partially granted Mooney's request for leave and then assigned her to provide coverage during part of that time.  These are the inconveniences of employment that do not rise to the level of adverse employment actions.

Accordingly, the FAC had adequately pleaded only four adverse employment actions.  They are items 1, 3, 4 and 5.

The defendants' motion is also granted as to Mooney's

---

[4] The defendants argue that the plaintiff had to actually apply for a new position to plead an adverse action premised on a failure to promote.  Because of the failure of the FAC to even identify the position or positions that the plaintiff desired to have, it is unnecessary to grapple further with the defendants' argument.

hostile work environment claim, because the FAC does not allege severe or pervasive conduct.  The FAC does not allege that DSNY was so "permeated" with sexism as to alter the terms and conditions of Mooney's employment.  See McGullam, 609 F.3d at 77.  Generally speaking, the FAC alleges that Mooney had a disappointing and tense working relationship with her supervisor and over the course of approximately four years, faced petty slights at work, and the loss of two weeks of vacation and the opportunity to accrue one day of overtime pay.

Allegations 2, 3, 6, 7, 8, 9, and 10 fail to plead a causal connection between the defendants' actions and Mooney's gender. The FAC repeatedly pleads that Mooney is "unaware of any male employees" who were treated in the same manner as her.  That is not a factual allegation sufficient to plead a causal relationship between Mooney's gender and her employer's conduct. The question is whether any similarly situated male employee was treated differently in comparison to Mooney.  See Littlejohn, 795 F.3d at 312-13.  Mooney is not required to present detailed evidence about comparators at this stage, but the FAC must contain a factual allegation that similarly situated comparators exist.[5]  Because the FAC fails to provide plausible support for a

---

[5] The allegation that a male employee, Joe Austin, was not disciplined for arriving two hours late to a shift in March 2017, whereas Mooney was disciplined for tardiness, comes the closest to alleging a comparator.  But the FAC does not plead

"minimal inference of discriminatory motivation," these allegations are dismissed.  Littlejohn, 795 F.3d at 311.

Conversely, allegations 1, 4, and 5 state a claim of gender discrimination.  The FAC alleges that, in February 2016, Lojan replaced Mooney as Executive Officer of her DSNY department with a male employee, Azzara, who had less experience than Mooney. The loss of a job title may be an adverse employment action, and the allegation that Mooney was replaced by a male employee with less seniority is sufficient, for the purpose of defeating a motion to dismiss, to state a claim of discrimination.  Because this event occurred before June 2016, it is beyond the Title VII statute of limitations; accordingly, Mooney may proceed as to this allegation under Section 1983 against Lojan and Visconti. Individuals may be liable under the NYSHRL if they are personally involved, and Mooney alleges that "the directive to remove [her] as an Executive Officer came directly from Visconti."  Accordingly, the NYSHRL claim may proceed against the City, Lojan, and Visconti.

The FAC also alleges that, in November 2016, Lojan reassigned Mooney from a locker room with running water to a dilapidated locker room with no running water, and informed her that this was the new women's locker room.  This states a claim

_____

facts to support the inference that Austin is similarly situated to Mooney in all material respects.

of gender discrimination.  The room's association with a single gender and Lojan's reference to Mooney's gender when reassigning her to the dilapidated locker room raises an inference that Lojan was motivated by Mooney's gender in doing so.  This claim may proceed against the City under Title VII, against Lojan and the City under the NYSHRL, and against Lojan under Section 1983.

The FAC also alleges that Mooney was denied the opportunity to earn overtime pay on a day in February 2017, which pleads an adverse action.[6]  It also alleges that during that same time frame Lojan asked a male employee, Azzara, to work on his day off and thereby earn overtime pay.[7]  The FAC also identifies Azzara as a less senior male coworker.  The allegation of a specific comparator is sufficient to raise an inference of causation.  Accordingly, the defendants' motion to dismiss is denied as to the allegation that DSNY and Lojan discriminated against Mooney when Lojan denied her overtime work on a day in February 2017.  Mooney's Title VII claim may proceed on this theory against the City, her NYSHRL claim may proceed against

---

[6] Whether the loss of the opportunity to earn overtime pay for one day's work was material must await summary judgment practice or trial.

[7] Mooney argues both that it was discriminatory to require her to cover a night shift while on leave, and to not require her to work one day while taking one of her days off.  Despite the tension in these positions, the claim regarding the loss of an opportunity to earn one day's overtime pay in February 2016 may proceed.

the City and against Lojan, and her Section 1983 claim may proceed against Lojan.

B. NYCHRL Discrimination Claims

NYCHRL claims must be analyzed separately from the NYSHRL and from Title VII. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). To state a claim for gender discrimination, a plaintiff must allege that "she has been treated less well than other employees because of her gender." Id. at 110 (citation omitted). "[T]he challenged conduct need not even be tangible (like hiring or firing)," but "[t]he plaintiff still [must allege] that the conduct is caused by a discriminatory motive." Id. (citation omitted).

A hostile work environment is actionable under the NYCHRL even if a plaintiff has not alleged that harassment is severe and pervasive. See Williams v. N.Y.C. Housing Auth., 872 N.Y.S.2d 27, 41 (1st Dep't 2009). The entire range of conduct above the "petty slight or trivial inconvenience" is actionable under the NYCHRL. Id. A plaintiff must, however, allege "unequal treatment based on gender." Id. at 40.

As with the NYSHRL, an individual may be liable for violating the NYCHRL if they individually participate in discriminatory conduct. See Feingold, 366 F.3d at 158. The statute of limitations for NYCHRL claims is three years, see N.Y.C. Admin. Code § 8-502(d), and is tolled while EEOC

proceedings are pending.  See Negron, 2016 WL 7238959, at *1.

Accordingly, events that occurred after June 27, 2014 are timely

for Mooney's NYCHRL claims.

Mooney bases her NYCHRL claim on the same conduct as her

Title VII, NYSHRL, and Section 1983 claims.  Although the NYCHRL

covers a greater range of employer action than Title VII and the

NYSHRL, all but three of Mooney's allegations of gender

discrimination in violation of the NYCHRL must be dismissed for

failure to plead that the alleged discrimination was motivated

by Mooney's gender.

The FAC fails to allege a causal connection between the way

she was treated at work and her gender.  As discussed above,

allegations 2, 3, 6, 7, 8, 9, and 10 of Mooney's gender

discrimination claim are not supported by any specific

allegation that a similarly situated employee of a different

gender exists.  Nor has Mooney identified evidence from which a

discriminatory motive may be inferred.  Accordingly, Mooney's

NYCHRL claim is dismissed insofar as it is based on allegations

2, 3, 6, 7, 8, 9, and 10.

For the same reasons described above, the FAC states a

claim of discrimination against the City and against Lojan

insofar as it is based on the denial of overtime work for a day

in February 2017, against the City and Lojan insofar as it is

based on Mooney's assignment in November 2016 to a dilapidated

locker room, and against all three defendants insofar as it is based on Mooney's removal as an Executive Officer in February 2016.

The NYCHRL permits a wider variety of hostile work environment claims to go forward than federal or state law. See Williams, 872 N.Y.S.2d at 40-41. Nonetheless, Mooney has failed to state a NYCHRL hostile work environment claim. The claims that survive are discrete acts of differential treatment based on Mooney's gender, and do not allege that the defendants created an environment of harassment. Mooney's NYCHRL hostile work environment claim is therefore dismissed.

II. Retaliation Claims

A. Federal and State Retaliation Claims

For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against him, (2) because he has opposed any unlawful employment practice." Duplan, 888 F.3d at 625 (citation omitted). "In the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination." Shultz, 867 F.3d at 309. To be actionable, an "employer's conduct must be harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. (citation omitted).

> To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action. But-for causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.

Duplan, 888 F.3d at 625 (citation omitted). As is true of discrimination claims, the NYSHRL and Section 1983 each prohibit retaliation to the same extent as Title VII. See Vega, 801 F.3d at 82 (Section 1983); McMenemy v. City of Rochester, 241 F.3d 279, 283 n.1 (2d Cir. 2001) (NYSHRL claims).

> A causal connection may be pleaded

> either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.

Littlejohn, 795 F.3d at 319 (citation omitted). When indirect causation is alleged, there is no "bright line" rule that "define[s] the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." Id. The Second Circuit has held that causation was sufficiently alleged where retaliatory conduct occurred approximately three months after protected activity. See Vega, 801 F.3d at 92.

Mooney identifies only three protected activities in which she engaged. First, she alleges that she protested her 2016

evaluation that was provided to her on February 22, 2017, when she wrote in the comments section of that evaluation that she was "not being treated the same as her male coworkers." Second, she alleges that, when she received an Official Letter of Warning from Lojan in late August or early September 2017, she wrote on the letter that "she was not being treated the same as her male coworkers." Third, she filed an EEOC complaint in April 2017 and filed this lawsuit in January 2018. Each of these acts could be construed as opposing gender discrimination.

Mooney alleges that the defendants took a number of actions to retaliate against her. To the extent Mooney relies on conduct that occurred before the protected activity, the FAC does not plausibly allege that the defendants' actions were caused by conduct that had not yet occurred. For instance, although Mooney claims that the 2016 evaluation itself was retaliatory, she has not identified any preceding protected activity.

The FAC alleges that Lojan retaliated against Mooney for her February 2017 comment that she was being treated differently than her male coworkers when he issued a warning letter for failing to properly report an incident in August 2017. This six-month gap between protected activity and alleged retaliation does not plausibly allege a causal connection. The FAC does not allege that the defendants took any retaliatory actions closer

in time to the February 2017 comment, and the FAC alleges no other linkage.  Accordingly, the motion to dismiss is granted as to this portion of Mooney's retaliation claim.

In contrast, the FAC states a retaliation claim to the extent it alleges that the defendants retaliated against Mooney in September 2017.  Specifically, the FAC alleges (1) that Lojan issued Mooney a second warning letter on September 12, 2017, regarding tardiness that occurred weeks prior; (2) that Lojan approved leave time for Mooney on September 18, 2017, and then rescinded the leave approval and mandated that Mooney work night relief shifts during the time she had requested off; and (3) on April 9, 2018, Mooney was transferred to Queens East.[8]  The motion to dismiss is denied as to these portions of Mooney's Title VII, NYSHRL, and Section 1983 retaliation claims.[9]  Whether these actions were taken in retaliation for protected activity or whether they are serious enough to dissuade a reasonable worker from protesting discrimination must be determined through summary judgment practice or at trial.  Mooney's Title VII retaliation claim may proceed against the City on all three

_____

[8] The FAC does not allege that the individual defendants were involved in this decision, so the Queens East transfer may only proceed against the City.

[9] As with her Section 1983 discrimination claim against the City, Mooney's Section 1983 retaliation claim against the City does not allege a policy or custom of retaliation and so fails to state a claim.

acts, her NYSHRL retaliation claim may proceed against the City on all three acts and against Lojan as to acts 1 and 2, and her Section 1983 retaliation claim may proceed against Lojan on acts 1 and 2.  Her NYSHRL and Section 1983 retaliation claims against Visconti are dismissed because there is no allegation that he personally participated in any retaliatory acts.

B. NYCHRL Retaliation Claims

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Mihalik, 715 F.3d at 112 (citation omitted).  "[O]pposing any practice can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong."  Id. (citation omitted).  As with Title VII retaliation claims, temporal proximity may be used to support an inference of indirect causation, and there is no bright line rule to determine when a gap in time attenuates an inference of retaliatory motive.  See Harrington v. City of New York, 70 N.Y.S.3d 177, 181 (1st Dep't 2018).

As with her Title VII and NYSHRL retaliation claims, Mooney

alleges that she took two actions to oppose discriminatory treatment:  writing a comment in February 2017 on her 2016 evaluation, and writing a comment in September 2017 on a warning letter she received in late August or early September 2017.  She alleges retaliatory acts consisting of:  (1) the warning letter issued in August or September 2017, (2) the warning letter issued in late September 2017, (3) the denial of time off and imposition of night relief shifts described above, and (4) her transfer to Queens East in April 2018.  For the reasons discussed above, Mooney's NYCHRL claim may proceed as to the second warning letter against the City and Lojan, the night relief shifts against the City and Lojan, and the Queens East transfer against the City only.  The time between Mooney's February 2017 comment and the first warning letter is too attenuated to raise a reasonable inference of retaliatory motive, however, so that claim is dismissed.  Mooney's NYCHRL retaliation claims against Visconti are also dismissed because there is no allegation that he participated in the retaliatory conduct.

## Conclusion

The defendants' May 23, 2018 motion to dismiss the FAC for failure to state a claim is granted in part.  Portions of Mooney's Title VII, NYSHRL, NYCHRL, and Section 1983 claims may

proceed as described above.

Dated:    New York, New York
          September 12, 2018

                                   _____
                                              DENISE COTE
                                   United States District Judge