UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
JANICE MOONEY,                        :
                                      :
                  Plaintiff,          :            18cv328(DLC)
                                      :
            -v-                       :         OPINION AND ORDER
                                      :
THE CITY OF NEW YORK, PAUL VISCONTI,  :
Individually and in his Official      :
Capacity and JAVIER LOJAN,            :
Individually and in his Official      :
Capacity,                             :
                                      :
                  Defendants.         :
                                      :
--------------------------------------X


APPEARANCES

For the plaintiff:
Jonathan A. Tand
Raiser & Kenniff, P.C.
300 Old Country Road, Suite 351
Mineola, New York 11501

For the defendants:
Zachary W. Carter
Evan M. Piercey
Corporation Counsel of the City of New York
100 Church Street, Room 2-184
New York, New York 10007


DENISE COTE, District Judge:

       Plaintiff Janice Mooney, an employee of the New York City

Department of Sanitation ("DSNY"), an agency of the City of New

York (the "City"), alleges that two of her supervisors,

defendants Paul Visconti and Javier Lojan, discriminated and

retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and 42 U.S.C. § 1983 ("Section 1983"). The defendants have moved for summary judgment. For the reasons that follow, the motion is granted.

## Background

The following facts are undisputed or taken in the light most favorable to Mooney, the non-moving party, unless otherwise noted. Mooney began working for DSNY as a Sanitation Worker in the year 2000. Mooney was promoted through various positions and ultimately to Deputy Borough Chief in December 2012. As a Deputy Chief, Mooney's duties involved overseeing a number of DSNY districts. After her promotion to Deputy Borough Chief, Mooney was initially assigned to the Bronx.

In January 2014, Mooney was transferred to the Queens West Borough, where her supervisor was Borough Chief Thomas Albano. In April 2015, Albano made Mooney the Executive Officer ("XO") for Queens West. The Queens West XO is the "right hand" of the Queens West Borough Chief. Becoming XO is not a promotion from Deputy Borough Chief, and the XO position does not carry any increased compensation.

In June 2015, Lojan became the Queens West Borough Chief and thus Mooney's new supervisor. Mooney continued to serve as Queens West XO until February 2016, at which point Lojan replaced her with a male Deputy Borough Chief.

In November 2016, Lojan told Mooney that she needed to remove her belongings from a certain storage room on the DSNY Queens West premises. During Albano's tenure as Queens West Borough Chief, he had permitted Mooney to use this storage room, which had a sink but no shower or bathroom. The room contained a locker, and Mooney had placed a futon in the room as well. Separately, Mooney had access to a bathroom down the hall and to a locker room at Queens West that had a shower and bathroom, although it was primarily a locker room for female mechanics and was located about half a block from and five floors below the storage room. Lojan told Mooney that the reason she needed to vacate the storage room was that he needed it "for himself." Lojan also offered Mooney the use of a different storage room that was one door down the hall from the original. Mooney was unsatisfied with the new room because the ceiling was falling down, there was debris on the floor, and the overhead lights did not work. But she never asked Lojan or anyone else at the Borough to address these issues.

On February 13, 2017, the DSNY Chief of Bureau Operations sent a Memorandum concerning staffing plans for a snowstorm that

was anticipated the following day.  February 14 was Mooney's
regularly scheduled day off ("RDO").  Lojan did not ask Mooney
to work on February 14, and consequently she could not earn
overtime on that day.  Lojan was able to fulfill the staffing
requirements of the February 13 Memorandum with the three Deputy
Chiefs who were already scheduled to work on February 14, and
there was no administrative need for Mooney or any other Deputy
Chief to work on their RDO.  Lojan afforded Mooney opportunities
to work overtime on her RDO on other occasions both before and
after February 14, 2017.

    Later in February 2017, Mooney received a DS-997 letter of
warning for failing to accurately complete an Unusual Occurrence
Report concerning a vehicle with a missing tire.  On September
12, 2017, Mooney received another DS-997 (the "September 2017
DS-997") for arriving late to a work shift.  On the September
2017 DS-997, Mooney agreed that she was not on time for the
shift but wrote that she "[found] this degree of reprimand
unwarranted."  She added, "Again, I am not being treated in the
same manner as my male Co-Workers."

    On September 18, 2017, Mooney emailed Lojan asking that she
be permitted to take three weeks of leave, spanning late October
and early November.  For approximately nine months, Mooney had
been aware that she was scheduled to provide night coverage

during that third week.[1]  Lojan responded that Mooney could take the first two of the three weeks off but that he would need to check about the third.  Lojan did not permit her to take the third week of leave.  On September 26, a DSNY Operations Supervisor emailed Lojan requesting night coverage for October 30 through November 4.  Lojan responded indicating that Mooney would provide coverage for October 30 through November 3 and that another Deputy Chief would provide coverage on November 4.

In April 2018, the DSNY First Deputy Commissioner reassigned twenty Deputy Chiefs to new locations.  Among the twenty reassignments, Mooney and a male Deputy Chief were reassigned from Queens West to Queens East.

This suit was filed on January 12, 2018.  The defendants' motion to dismiss was partially granted on September 12, 2018.  Mooney v. City of New York, No. 18CV328(DLC), 2018 WL 4356733, at *10 (S.D.N.Y. Sept. 12, 2018).

---

[1] DSNY required Deputy Borough Chiefs, like Mooney, to cover the Night City Superintendent position (i.e., provide "night coverage") when the regularly assigned Assistant Chief was sick, on vacation, or otherwise absent.  Borough Chiefs, like Lojan, were required to formulate a schedule indicating when the Deputy Chiefs under their supervision would be available to provide such night coverage.  Lojan created such a schedule and emailed it to the Queens West Deputy Chiefs, including Mooney, in December 2016.  This schedule, which Mooney was aware of, indicated that she was slated to provide night coverage on, among other dates, "10/29/17 – 11/4/17."

The following claims remain in the case: (1) sex-discrimination claims concerning Mooney's removal as XO, under § 1983, the NYSHRL, and the NYCHRL; (2) sex-discrimination claims concerning Mooney's removal from the storage room, under Title VII, § 1983, the NYSHRL, and the NYCHRL; (3) sex-discrimination claims concerning Mooney's denial of the opportunity to earn overtime pay on February 14, 2017, under Title VII, § 1983, the NYSHRL, and the NYCHRL; (4) retaliation claims concerning the September 2017 DS-997, under Title VII, § 1983, the NYSHRL, and the NYCHRL; (5) retaliation claims concerning the denial of Mooney's request for a third week off in the fall of 2017 and the requirement that she work night relief that week, under Title VII, § 1983, the NYSHRL, and the NYCHRL; and (6) retaliation claims concerning Mooney's transfer to Queens East, under Title VII, the NYSHRL, and the NYCHRL.  Id. at *6-7, *9.

Following discovery, on May 9, 2019, defendants moved for summary judgment.  The motion became fully submitted on July 3, 2019.

## Discussion

A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017) (citation omitted). "Where, as here, the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can point to an absence of evidence to support an essential element of the nonmoving party's claim." Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015). In making this determination, the court "draws all inferences in favor of the nonmoving party." Id.

Once the moving party has cited evidence showing that the non-movant's claims or affirmative defenses cannot be sustained, the party opposing summary judgment "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

In the context of employment discrimination, "an extra measure of caution is merited" in granting summary judgment

because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).

I.    Federal and State Discrimination Claims

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII claims are evaluated under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Walsh v. New York City Hous. Auth., 828 F.3d 70, 74-75 (2d Cir. 2016). This same framework generally applies to § 1983 claims and NYSHRL claims. Id.; Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015). But see Naumovski v. Norris, ___ F.3d ___, No. 18-1556-CV, 2019 WL 3770193, at *6 (2d Cir. Aug. 12, 2019) (describing differences between Title VII and § 1983 claims).

First, the "plaintiff must establish a prima facie case of sex discrimination by demonstrating that (1) she was within the

8

protected class; (2) she was qualified for the position; (3) she
was subject to an adverse employment action; and (4) the adverse
action occurred under circumstances giving rise to an inference
of discrimination." <u>Walsh</u>, 828 F.3d at 75 (citation omitted).
If the plaintiff does so, the "burden then shifts to the
employer to articulate a legitimate, nondiscriminatory reason
for its employment action." <u>Garcia v. Hartford Police Dep't</u>,
706 F.3d 120, 127 (2d Cir. 2013) (citation omitted).

In opposing a motion for summary judgment, when the
defendant has "offer[ed] a legitimate, nondiscriminatory reason
for the adverse employment action, the burden is on the
plaintiff to point to evidence that reasonably supports a
finding of prohibited discrimination; otherwise, the defendant
is entitled to summary judgment." <u>Id.</u> The plaintiff "is not
required to show that the employer's proffered reasons were
false or played no role in the employment decision, but only
that they were not the only reasons and that the prohibited
factor was at least one of the motivating factors." <u>Id.</u>
(citation omitted).

At this third step of the <u>McDonnell Douglass</u> analysis, the
standard for a § 1983 claim diverges somewhat from the standard
for Title VII and NYSHRL claims: A § 1983 plaintiff must
establish not merely that discrimination was a motivating
factor, but rather that discrimination was the but-for cause of

the adverse employment action.  Naumovski, 2019 WL 3770193, at

*6-7; see also Matusick v. Erie Cty. Water Auth., 757 F.3d 31,

47 (2d Cir. 2014) (motivating-factor standard applies to

NYSHRL).

For purposes of a discrimination claim, an adverse

employment action is "a materially adverse change in the terms

and conditions of employment."  Shultz v. Congregation Shearith

Israel of City of New York, 867 F.3d 298, 304 (2d Cir. 2017)

(citation omitted).

> To be materially adverse a change in working
> conditions must be more disruptive than a mere
> inconvenience or an alteration of job
> responsibilities.  A materially adverse change might
> be indicated by a termination of employment, a
> demotion evidenced by a decrease in wage or salary, a
> less distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices unique to a particular situation.

Id.; see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d

72, 88 (2d Cir. 2015) (holding that allegation of a material

increase in responsibilities without additional compensation

adequately pleads an adverse employment action); Littlejohn, 795

F.3d at 312 n.10 (holding that exclusion from meetings is not an

adverse employment action, when such exclusion does not

significantly diminish an employee's responsibilities); Brown v.

City of Syracuse, 673 F.3d 141, 151 (2d Cir. 2012) (holding that

suspension with pay is not, without more, an adverse employment

action, even when accompanied by loss of overtime

opportunities); Terry v. Ashcroft, 336 F.3d 128, 144 (2d Cir.
2003) ("An internal transfer can be an adverse employment action
if accompanied by a negative change in the terms and conditions
of employment." (citation omitted)); Treglia v. Town of Manlius,
313 F.3d 713, 720 (2d Cir. 2002) (noting that negative
employment evaluation letters may be adverse employment
actions).

    A.  Removal of Mooney From the XO Position

    Summary judgment is granted as to Mooney's § 1983 and
NYSHRL claims concerning her removal from the XO position.
Defendants first contend that removal from the XO position was
not a materially adverse change in the conditions of employment
because the position was not a promotion or a prerequisite for
promotion, and carried no increased compensation.  But a
"demotion evidenced by . . . a less distinguished title" may be
an adverse employment action.  Vega, 801 F.3d at 85.  The Second
Circuit has made clear that "[a] lateral transfer that does not
result in a reduction in pay or benefits may be an adverse
employment action so long as the transfer alters the terms and
conditions of the plaintiff's employment in a materially
negative way."  Patrolmen's Benevolent Ass'n. of City of New
York v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002).

    "Executive Officer" is self-evidently a distinguished
title, which Mooney was deprived of.  Also, it is undisputed

11

that the XO was the right hand of the Borough Chief.  Mooney testified at her deposition that the XO is responsible for preparing a daily report about the "number of trucks and manpower [the borough] need[s] to function daily."  Despite the fact that Mooney did not characterize becoming XO as a "promotion," a reasonable jury could find that removal from this position of responsibility had a materially negative impact on Mooney's career.

Defendants also argue that Mooney has failed to raise a genuine dispute about whether her sex was a motivating factor in the decision to remove her as XO.  They are correct.[2]  According to Mooney, Lojan never explained why he replaced her as his XO.  He simply told her he was "the boss" and "[didn't] need a reason" to replace her.[3]  Mooney also testified that she felt Lojan wanted a male XO based on her observation that he had a more collegial relationship with the male Deputy Chiefs.  It is undisputed that Lojan replaced Mooney with a male Deputy Chief.

---

[2] Mooney has also failed to offer evidence from which a jury could conclude that the removal would not have occurred but for Lojan's discriminatory intent.

[3] Lojan testified that he told Mooney that the reason he removed her from the position was her work performance, specifically that "[h]er work required constant follow up, there were mistakes that were made," and that she had an issue with lateness.

Other than the fact that she was replaced by a male, Mooney has not offered any evidence from which a jury could conclude that Lojan's decision was motivated by discriminatory intent. It is not surprising that a Borough Chief would want to select his or her own XO.  Indeed, in her deposition, Mooney testified that Lojan said to her at the time of her removal, "[Y]ou weren't my first choice[;] I should have done it when I got here."  Mooney admits she does not actually know why Lojan chose to replace her with a male colleague.  The only other evidence that Mooney offers from which to infer discriminatory intent is the observation that Lojan had more collegial relationships with the male Deputy Chiefs.  Mooney did not explain what she meant, however, by that or give examples of behavior or instances of favoritism to support her conclusion.  She explained only that "when he dealt with me it was more or less cut and dry."  The fact that Lojan selected another Deputy Chief who was a male to serve as his XO is insufficient to support a finding that Lojan intended to discriminate against Mooney because of her gender.

Direct evidence of discriminatory intent is rarely available, of course, and thus the Second Circuit has recognized a "need for caution about granting summary judgment to an employer in a discrimination case where the merits turn on a dispute as to the employer's intent."  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013) (citation omitted); see

also Schiano, 445 F.3d at 603. Nonetheless, plaintiff has failed to identify sufficient evidence for a jury to reasonably conclude that her sex was a but-for cause of, or motivating factor in, the decision to remove her as XO. They would be left to speculate about Lojan's motives, and this they may not do. See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) ("Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion.").

B. Reassignment of Mooney's Storage Room

No reasonable jury could find that replacement of one storage room with another was an adverse employment action. While the new storage room did not have a sink, plaintiff admits that there was a bathroom just down the hall. Although Mooney testified that there were issues with the new storage room, she never asked Lojan, or anyone at Queens West, to address those issues, further suggesting that the change in storage rooms was immaterial. Indeed, in her opposition to this motion plaintiff makes no response to defendants' argument that removal from the storage room was not an adverse employment action.

Also, no reasonable jury could conclude that Mooney's sex was a motivating factor in the decision to have her change storage rooms. Mooney asserts that Lojan told her that he needed the room "for himself" and "set it up" with an air

mattress and a couch.[4]  This is not evidence that Mooney's sex
played a role in Lojan's decision.  There is no indication that
male Deputy Chiefs had access to superior storage rooms.

C.  Denial of Overtime Opportunity on February 14, 2017

Summary judgment is appropriate on plaintiff's third
remaining claim for similar reasons.  First, not being asked to
work on one's previously scheduled day off is not a materially
adverse change in the conditions of employment -- even when it
entails a lost opportunity to earn overtime compensation for
that day.  It is undisputed that February 14, 2017 was Mooney's
regularly scheduled day off.  And it is undisputed that Lojan
afforded her opportunities to earn overtime on other RDOs before
and after February 14.  Adherence to a single day's schedule
cannot be described as a material change in the conditions of
employment.

Nor is there sufficient evidence to raise a genuine dispute
about whether Lojan's stated reason for the decision was
pretextual.  It is undisputed that there were three other Deputy
Chiefs scheduled to work on February 14.

The sole piece of evidence that Mooney offers to support a
finding of discriminatory motive is her testimony that, later in

---

[4] Lojan asserts that he required Mooney to vacate the original
storage room because it was needed for Queens West Borough
storage.

the week, she saw an email from Lojan to a male Deputy Chief
requesting that he work on his RDO on some other day than
February 14.  Accepting plaintiff's assertion that a male Deputy
Chief was given the opportunity to work on his RDO,[5] Mooney has
not presented sufficient evidence to support a finding that she
was discriminated against.  As already described, Lojan gave
Mooney several opportunities to earn overtime on her RDOs both
before and after February 14.

## II.  NYCHRL Discrimination Claims

NYCHRL claims must be analyzed separately from claims under
the NYSHRL and Title VII.  Mihalik v. Credit Agricole Cheuvreux
N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).  The NYCHRL does
not require that a plaintiff prove an adverse employment action.
Id. at 114.  Rather, "the plaintiff need only show differential
treatment -- that she is treated 'less well' -- because of a
discriminatory intent."  Id. at 110 (citation omitted).
"Indeed, the challenged conduct need not even be 'tangible'
(like hiring or firing)."  Id. (citation omitted).[6]

---

[5] Defendants have submitted as an exhibit the timesheets of the
Queens West Deputy Chiefs for the week of February 12-18, 2017.
While the exhibit is somewhat unclear, it suggests that the male
Deputy Chief Mooney referred to also did not work on his RDO.

[6] An affirmative defense is available to avoid liability for
conduct that "a reasonable victim of discrimination would
consider 'petty slights and trivial inconveniences.'"  Mihalik,

The NYCHRL, however, still contains a causation requirement.  The plaintiff must prove that "she has been treated less well than other employees because of her gender." Williams v. New York City Hous. Auth., 61 A.D.3d 62, 78 (N.Y. App. Div. 2009).

If the defendant has offered legitimate reasons for the challenged conduct, then summary judgment on an NYCHRL claim "is appropriate if no reasonable jury could conclude either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 76 (2d Cir. 2015) (citation omitted).  Thus, federal summary judgment standards continue to apply to NYCHRL claims.  Mihalik, 715 F.3d at 111.  Summary judgment may be granted on NYCHRL claims "if there is no genuine dispute as to any material fact regarding plaintiff's claim."  Id. at 112.

Summary judgment is granted for defendants on Mooney's NYCHRL discrimination claims because there is insufficient evidence for a reasonable jury to find that she was treated less well because of her sex.  The reasons that there is insufficient

---

715 F.3d at 111 (citation omitted).  The defendants have not raised any such defense here.

17

evidence are the same as those discussed for Mooney's federal and state claims.  See Ya-Chen Chen, 805 F.3d at 76 & n.13 (noting that the causation inquiry under the NYCHRL "closely mirrors the questions that courts must answer when resolving summary judgment motions on Title VII claims").  To summarize: (1) Mooney offers no evidence other than her speculation about the reasons that she was replaced by a male XO; (2) there is no evidence that the switch in Mooney's storage rooms was due to her sex; and (3) there is no evidence that plaintiff was not asked to work overtime on February 14, 2017 because of her sex.

III. Federal and State Retaliation Claims

Title VII makes it unlawful for an employer "to discriminate against any employee or applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII investigation or proceeding."  Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (citation omitted).  "This anti-retaliation provision is intended to further the goals of the anti-discrimination provision by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of Title VII's basic guarantees." Id. (citation omitted).

The Supreme Court has explained that a broad interpretation of Title VII's retaliation provision furthers the overall

purpose of the statute:  "Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses. . . .  Interpreting the antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment of the Act's primary objective depends." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).

Courts in this Circuit analyze Title VII and NYSHRL retaliation claims -- like discrimination claims -- under the burden-shifting standard set out in McDonnell Douglas, 411 U.S. at 802.  Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013).  Under McDonnell Douglas, "[t]o establish a prima facie case of retaliation sufficient to withstand summary judgment, [plaintiff] must adduce evidence showing that (1) she engaged in protected activity, (2) the employer was aware of this activity, (3) she was subjected to an adverse employment action, and (4) a causal connection exists between the adverse action and her protected activity."  Bentley v. Autozoners, LLC, ___ F.3d ___, No. 18-2441-CV, 2019 WL 3884248, at *8 (2d Cir. Aug. 19, 2019). Once the plaintiff has made such a showing, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action."  Id.  "The plaintiff then bears the ultimate burden to show that the employer's

proffered reason was merely a pretext for an unlawful motive."
Id.  To show pretext, the plaintiff "must show that retaliation
was a 'but-for' cause of the adverse action, and not simply a
'substantial' or 'motivating' factor in the employer's
decision."  Zann Kwan, 737 F.3d at 845 (citation omitted).

For a plaintiff to establish that she was engaged in
protected activity, the first element of a prima facie case of
retaliation, "the plaintiff need only have had a good faith,
reasonable belief that [s]he was opposing an employment practice
made unlawful by Title VII."  Kessler v. Westchester Cty. Dep't
of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006) (citation
omitted).  Protected activity need not consist of a formal
complaint of discrimination; rather, "internal complaint to
company management" can constitute a protected activity under
Title VII.  Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957
F.2d 59, 65 (2d Cir. 1992).

An adverse employment action is the third element of a
prima facie retaliation case, and more broadly defined than it
is in the context of a discrimination case.  Shultz, 867 F.3d at
309.  To constitute an adverse employment action for purposes of
a retaliation claim, an "employer's conduct must be harmful to
the point that it could well dissuade a reasonable worker from
making or supporting a charge of discrimination."  Id. (citation
omitted).  "Actions that are 'trivial harms' -- i.e., those

petty slights or minor annoyances that often take place at work and that all employees experience -- are not materially adverse." Id. (citation omitted).

A plaintiff may demonstrate the fourth element of a prima facie case, a causal connection between the protected activity and the adverse employment action, "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Hicks, 593 F.3d at 170 (citation omitted).

Once the employer has articulated a legitimate, non-retaliatory reason for the adverse employment action, however, temporal proximity alone is insufficient to show pretext. Bentley, 2019 WL 3884248, at *9 (affirming grant of summary judgment and noting that "temporal proximity . . . cannot demonstrate pretext"); see also Zann Kwan, 737 F.3d at 847 (holding that an employer's "inconsistent explanations for [plaintiff's] termination and the very close temporal proximity between her protected conduct and her termination are sufficient to create a triable issue of fact").

None of plaintiff's retaliation claims survive summary judgment. Plaintiff asserts that she engaged in three instances

of protected activity relevant here:  (1) In February 2017 she wrote a comment on her 2016 evaluation, indicating that she was not being treated the same as her male co-workers; (2) she wrote a similar comment on the September 2017 DS-997; and (3) in January 2018 she filed this lawsuit.  Plaintiff argues that she suffered three instances of retaliation for these activities: (1) Lojan issued her the September 2017 DS-997 for arriving late to work; (2) Lojan denied her request to take a third week of leave spanning October and November 2017; and (3) she was transferred from Queens West to Queens East in April 2018.  For all three alleged retaliatory actions, no reasonable jury could conclude that a retaliatory motive was the but-for cause.  Also, no reasonable jury could conclude that the denial of a third week of leave constituted an adverse employment action.

A.   Issuance of the September 2017 DS-997

The only protected activity that Mooney alleges she engaged in prior to the September 2017 DS-997 is the comment that she wrote on the evaluation she received in February 2017.  The six-month gap between the protected activity and alleged retaliation is sufficiently long that a reasonable jury could not infer the required causation.  See Natofsky v. City of New York, 921 F.3d 337, 353 (2d Cir. 2019) (holding that a gap of nearly a year defeats an inference of causation); see also Mooney, 2018 WL 4356733, at *9.

Plaintiff appears to argue that summary judgment should not be granted because Lojan did not report the complaint she wrote on the September 2017 DS-997 to the DSNY Equal Employment Opportunity Office ("EEO"), as he was required to do.  Even if Lojan handled Mooney's complaint improperly, that does not support an inference that his issuance of the September 2017 DS-997 itself was discriminatory or that his motives for issuing the letter of warning were pretextual.[7]  After all, Mooney admits that she did arrive late for work as described in the letter of warning.

B.   Denial of a Third Week of Leave

No reasonable jury could find that denial of a third week of leave to Mooney in November 2017 was an adverse employment action.  It is undisputed that Mooney was made aware of the night relief schedule months earlier, in either December 2016 or January 2017.  Being asked to work when one is scheduled to work would not dissuade a reasonable worker from engaging in protected activity under Title VII.  That is especially true

---

[7] Insofar as Mooney's opposition suggests that Lojan's failure to investigate was a freestanding act of retaliation for the comment that she wrote on the September 2017 DS-997, that argument is meritless.  See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) ("[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint.").

when the worker has been granted two weeks of leave prior to the week of scheduled work.

Also, Mooney has not raised a genuine dispute about whether there was a causal connection between her comment on the September 2017 DS-997 and the denial of this third week of leave in October and November 2017.  It is undisputed that Lojan had a legitimate, non-retaliatory reason for denying the week of leave, i.e. that Mooney was previously scheduled to work night relief.  Mooney argues that Lojan's decision to adhere to the schedule was motivated by discrimination but offers no evidence to support this contention.  There is, for example, no evidence that similarly situated male employees were granted leave despite being scheduled to work night relief.  Although Mooney testified that Lojan "could have assigned one of the guys" to work the shift, there is no indication that his failure to do so was improperly motivated.

C.   Transfer to Queens East

Mooney has also failed to raise a genuine dispute as to causation for her transfer to Queens East.  It is true that she filed this suit in January 2018, and it is undisputed that she was transferred in April 2018.  But defendants have offered a legitimate, non-retaliatory reason for the transfer, i.e. that Mooney was reassigned as part of a routine, department-wide order in which twenty Deputy Chiefs were reassigned.  As part of

this transfer, a male Deputy Chief was also transferred from Queens West to Queens East.  Plaintiff presents no evidence that retaliatory motive played any role in her transfer.[8]

IV.  NYCHRL Retaliation Claims

The NYCHRL also makes it unlawful to retaliate against an employee for protected activity.  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112 (citation omitted).  Under the NYCHRL, "'opposing any practice' can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong."  Id. (citation omitted).

Claims under the NYCHRL must be analyzed "separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent such a construction is reasonably possible."  Id. at 109 (citation omitted).  "[S]ummary judgment

---

[8] Plaintiff appears to have abandoned this claim.  She does not discuss it in her opposition to the defendants' motion for summary judgment.

is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision." Id. at 116.

For the reasons discussed above, the defendants' motion for summary judgment should also be granted as to Mooney's NYCHRL retaliation claims. Under the NYCHRL, plaintiffs must still establish a causal connection between the adverse employment action and the protected activity. Mooney has failed to present evidence sufficient to permit a rational factfinder to find such a connection. Also for the reasons discussed above, denial of a third week of leave is not reasonably likely to deter an employee from taking action opposing discrimination.

## Conclusion

The defendants' May 9, 2019 motion for summary judgment is granted.


Dated:     New York, New York
           September 13, 2019

                        _____
                              DENISE COTE
                      United States District Judge